RECEIVED
IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
2006 JAN 10  A 9: 5  EASTERN DIVISION

JOHNNY HUGHLEY                      )
    Petitioner,                  )
                                    )
V.                                  )        CR. 98-97-E
                                    )
UNITED STATES OF AMERICA,           )        3:06 cv 28-T
    Respondent.                  )

## MOTION FOR NEW TRIAL
## UNDER RULE 60 (B) (6)

    This case presents extensive challenges to the method of selecting criminal petit

juries in the Middle District of Alabama ("The District"). Petitioner Johnny Hughley was

indicted for possession of a firearm in violation of 18 U.S.C. §922 (g) (1) and two counts

possession of federal reserve notes, in violation of 18 U.S.C. §472. The petitioner

Hughley appeared for jury selection on or about August 25, 1998.

Based on newly discovered evidence, petitioner files this his Rule 60 (B) (6) motion

challenging the composition of his jury venire, and he has requested a new trial. In his 60

(B) (6) motion, he alleges that the District court's method of jury selection violates 1) the

due process clause of the fifth amendment to the United States Constitution; 2) the sixth

amendment guarantee of a jury drawn from a 'fair-cross-section' of the community; 3)

the equal protection clause of the fifth amendment to the United States Constitution; 4)

the jury selection and service act (JSSA) of 1968, 28 U.S.A. 1861, Et Seq; 5) the

District's plan for the random selection of grand and petit jurors ("The Plan"); 6) that his

counsel of record was ineffective assistance of counsel for failure to challenge the

composition of the jury venire on the basis that the venire reflected the under-

representation of African-Americans; 7) government misconduct in the instant matters

1

priority for inclusion on the venire list. And third, petitioner Hughley alleges that the Clerk's 1) usurpation of authority in determining the standard for granting temporary excuses and deferments, 2) failure to obtain valid addresses for returned or undeliverable jury summons, and 3) failure to properly maintain the appropriate number of names in the MJW and QJW are substantial violations of JSSA. Petitioner Hughley contends that these violations warrant the granting of a new trial.

## B) CONSTITUTIONAL CHALLENGES

Although alleging violations of the fifth amendment's equal protection and due process clause, the focal point of petitioner Hughley's constitutional challenge is his argument that the District's method of jury selection results in disproportionately white jury venires that are violative of his sixth amendment right to a jury from a fair cross-section of the community. Accordingly, to petitioner Hughley, this case is unique because it involves under-representation at more than one stage of the jury selection process, which he attributes to two distinct occurrences. First, petitioner Hughley contends that the disparity between African Americans who respond to preliminary juror qualifications forms and the response rates of whites create a QJW which contains significantly lower number of African-Americans in proportion to the district-wide percentage of African-American voters. Second, petitioner Hughley contends that the use of K jurors causes a substantial, systematic effect on the racial composition of the jury summons and venire list which resulted in the under-representation of African-Americans on petitioner Hughley's venire and on the District's venires.

arises from the fact that the government misconduct in the instant arises from the fact the government knowingly seated a seated a jury that had been selected in violation of the Petitioner's fifth and sixth amendment rights.

## I.    PETITIONER HUGHLEY'S ARGUMENT

## A) STATUTORY AND PLAN CHALLENGES

Petitioner Hughley challenges the Clerk's practice of liberally granting temporary deferment to anyone who, regardless of their occupational status, claims, that jury service would be unduly harsh and inconvenient because of personal, family or work-related obligations. According to petitioner Hughley, this custom violates 1863 (b) (5) of the JSSA and page nine (9) of the plan which requires that individuals receiving temporary deferment belong to certain occupational classes. The linchpin of petitioner Hughley's argument is that this custom is tantamount to a substantial violation of the JSSA requirement that litigants in Federal court are entitled to a petit jury that is the result of a random jury selection process. Although conceding that race is not a factor in determining which jurors receive K code temporary deferment, petitioner Hughley argues that this seemingly race-neutral practice causes a non-random method of jury selections which results in disproportionately white jury venires. First, petitioner Hughley contends that the undisputed testimony of non-consented search, clearly establishes that white jurors receive temporary deferment at twice the rate of African Americans resulting in a pool of K jurors that is approximately 85% white. Petitioner Hughley argues that the jury administrator's practice of recalling each division's deferred jurors en masse and position them at the top of the summons list undoubtedly destroys the randomness of jury venire because a distinct, identifiable and disproportionately white group of potential jurors has

2

## II. DISCUSSION

### A) INTRODUCTION

Challenges to the jury selection process maybe based on the fair cross-section requirement of the sixth amendment, **Duren v. Missouri**, 439 U.S. 357 (1979), the equal protection component of the fifth amendment, **Castaneda v. Partion**, 430 U.S. 482 (1977), the due process clause of the fifth amendment, **Peters v. Kiff**, 407, U.S. 493 (1972), or substantial failure to comply with the provision of the JSSA, **United States v. Paradies**, 98 F.3d 1266, 1279 (11th Cir. 1996). Although defendants typically raise both constitutional and statutory challenges, a profound distinction exists between the two types of challenges because each addresses a different aspect of the jury selection process. The JSSA requires that the Federal District court adopt a detailed procedure for selection juries which ensures that grand and petit juries are randomly selected from a fair cross-section of the community. Although 1861 of the JSSA adopts the fair cross-section language of the sixth amendment and 1862 prohibits the type of intentional discrimination prohibited by the fifth amendment, the right to a jury "selection at random" is a statutory creation not a constitutional command, **United States v. Hawkins**, 566 F.2d 1006, 1012 (5th Cir. 1978); **United States v. Kennedy**, 548 F.2d 608, 614 (5th Cir. 1977). All decisions of the former fifth circuit decided prior of October 1, 1981, are binding precedent in this circuit, **Bonner v. City of Prichard**, 661 F.2d 1206 (11th Cir. 1981) (En Banc). This distinction between a statutory and constitutional challenge becomes even more important when the defendant alleges concomitant statutory and constitutional ground of relief because of the well-settled jurisprudential principle that a case should not be decided on constitutional grounds when it can be resolved on statutory

4

grounds, Califano v. Yamasaki, 297 U.S. 288, 347 (1936); **White v. State of Alabama**, 74, F.3d 1058, 1061 N.5 (11th Cir. 1996); **United States v. Bearden**, 659 F.2d 590 (5th Cir. 1981).

After the court's review of petitioner Hughley's motion under 60 (B)(6), the court here can only conclude that petitioner Hughley allegations of a substantial violation of the plan and the JSSA resulting from what he characterizes as the Clerk's usurpation of authority in determining the standards for granting temporary excuses and deferments, failure to obtain valid addresses for returned or undeliverable jury summons, and failure to properly maintain the appropriate number of names in the MJW and QJW are not substantial violations of the JSSA warranting a new trial. **Stone v. Immigration and Naturalization Serv.,** 517 U.S. 386, 401, 115 S.Ct. 1537, 1547, 131 L.Ed. 2d 465 (1995); and also Gonzalez v. Secretary for Dept. of Corrections, 366 F.3d 1253 (11th Cir. 2004).

However, the court must conclude here that the combined hardship deferments to any jury who requests one placing temporarily deferred jurors en masse at the top of the summon lists, and excluding K jurors from the coding process which purges the summons lists of excess jurors is a non-random process of creating final venire lists, which is a substantial violation of the JSSA. An unfortunate consequence of this non-random process is that the predominately white K jurors have priority from inclusion on the venire list of the expense of the predominately African American TZ jurors, because the record here clearly indicates that the Clerk's methodology of constructing venire lists introduces a significant element of non-randomization into the selection of the District's jury venires. That is not only a technical violation, but a substantial violation of the Plan

5

and the JSSA, petitioner Hughley's motion for a new trial should be due to be granted.
only because the court here can only conclude that petitioner Hughley's statutory
challenge succeeds, and here this court pretermits consideration of petitioner Hughley's
fifth and sixth amendment constitutional claims.

### III.    INEFFECTIVE ASSISTANCE OF COUNSEL

#### (i) The Jury Service and Selection Act Claim

The petitioner Hughley contends that his counsel of record, Terry R. Smiley was
ineffective assistance of counsel for failure to investigate the grand jury and petit jury in
the instant case to assure a selected fair cross-section of the community, "which provides
that all citizens shall have opportunity to be considered for service on grand petit juries,
and prohibits exclusion on the grounds of race, color, religion, sex, national origin or
economic status". Counsel Smiley knew or should have known that laws that requires
Federal District courts to adopt a "written plan for random selection of grand and petit
jurors" be designed to achieve the objective of sections 1861 and 1862 28 U.S.C. 1863
(a).

Here counsel Smiley never filed a motion challenging the composition of
petitioner Hughley's jury venire, even though there was clear evidence that there was not
fair cross-section of the community.

Counsel in the instant case, even though he knowingly knew the District court's
representation of its' written jury selection plan was a substantial violation of the JSSA.
Also, counsel was ineffective for failure to move for a mistrial or new trial on the
grounds that the implementation of the Middle District's jury selection plan substantially
violated the JSSA. On August 25, 1998, jury selection began in this case. During jury

selection, it became clear that the jury consisted of a disproportionate number of white jurors. In fact, only three (3) or four (4) of the prospective thirty-two (32) jurors available to defendant i.e. 13% were African Americans, the total venire was only 15% African Americans.

Although petitioner Hughley mentioned this great number of whites to counsel, counsel failed to challenge to the composition of the jury venire on the grounds that it had been selected inappropriately and in violation of the sixth amendment.

Counsel was ineffective for failure to attempt to determine what portion of petitioner's panel would be Caucasian and what portion of the panel would be African American as if the jury panel was composed of a fair cross-section of the community for the Middle District of Alabama. From the United States Department of Commerce 1990 census of population and from the Office of Voter Registration for the State of Alabama as of September 30, 1995.

These statistics establish the following:

a)  The total population of these twenty-three (23) counties, as of the 1990 census, is 949,497.

b)  The number of persons living in these 23 counties who are Caucasian, designated as "white" according to the 1990 census, is 641,193.

c)  Thus, approximately sixty-seven (67) percent of the population of the Middle District of Alabama, is Caucasian.

d)  The number of persons living in these 23 counties who are African-American, designated at "black" according to the 1990 census, is 298,872.

e) Thus, approximately thirty-one (31) percent of the population of the Middle District of Alabama, is African-American.

Accordingly, I can only anticipate a jury panel drawn from a fair cross-section of the community of the Middle District of Alabama would be 31% African-American and 67% Caucasian.

In this case, the jury venire consisted of approximately 103 members, of which 15% or 14% were African-American. Of the panel from which petitioner Hughley's jury was drawn, only 4 members, or 12.5% were African-American.

As this court is well aware, the sixth amendment to the United States constitution guarantees that criminal defendants are entitled to effective assistance of counsel in presenting their defense. The Supreme Court has stated the right to counsel is a fundamental right of criminal defendants. It assures fairness, thus the legitimacy of our adversary process, **Kimmelman v. Morrison**, 477 U.S. 365, 374 (1986); **Everett v. Beard**, 290 F.3d 500 (3rd Cir. 2002). The Supreme Court has recognized that "right to counsel is the right to effective assistance of counsel", **McMann v. Richardson**, 397 U.S. 759, 771 (1970); **United States v. Ex. Rel. v. Waiters**, 510 F.2d 887 (3rd Cir. 1995): to succeed on a claim of ineffective assistance of counsel, a defendant must show that his counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result, **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2055, 2063 (1984). In order to prevail on an ineffective assistance of counsel claim, the defendant must satisfy **Strickland's** two-prong-test. ID, **Moore v. United States**, 432 F.2d 730 (3rd Cir. 2002). The **Strickland** court held that a defendant must demonstrate that the representation he received "fell

8

below an objective standard of reasonableness, and he must establish" a reasonable probability that but for counsel's unprofessional errors the results of the proceedings would have been different.  ID at 688, 694, 104 S.Ct. 2065, 2068.

In the context of a challenge of the composition of the jury on the basis that the venire reflected the under-representation of African-Americans.  The Supreme Court announced that counsel must give objectively reasonable  advice and ask the court to excuse the seated jury venire on the grounds that it had been selected inappropriately and in violation of the sixth amendment, **Hill v. Lockhart**, 474 U.S. 52, 106 S.Ct. 366 (1985).  Ineffective assistance of counsel at jury selection stage may challenge the jury selection process utilized to compile the jury venire based on the fair cross-section requirement of the sixth amendment, the equal protection component of the fifth amendment, or on a substantive failure to comply with the provisions of the jury selection and service act.  The prejudice prong of **Strickland** focuses on whether counsel's constitutionally ineffective performance affected the outcome of the jury venire on the basis that the venire reflected the under-representation of African-Americans.  In other words, in order to satisfy the prejudice requirement the defendant must show that a reasonable probability exists that, but for counsel's errors of not challenging the composition of the jury venire on the basis that the venire reflected the under-representation of African-Americans.  He would have insisted on a challenge of the jury venire before going to trial.  The counsel in the instant matter knowingly knew during jury selection counsel seen the jury consisted of a disproportionate number of white jurors.  In fact, only three or four of the prospective thirty-two jurors available to

9

defendant i.e. 13% were African-Americans and the total venire was only 15% African-Americans.

Counsel meets the second prong of **Strickland** clearly fell below standards of reasonable articulated of **Strickland**, counsel failed to investigate the jury venire on the basis that the venire reflected the under-representation of African-Americans, and counsel knowingly induced petitioner to go to trial without asking the court to excuse the seated jury venire on the grounds it had been selected inappropriately and in violation of the sixth amendment. Here the petitioner Hughley was prejudiced by the conduct of his counsel of record, because he might not have even went to trial if he had properly been advised of the consequences that the jury would consist of a disproportionate number of white jurors. Here the petitioner should be granted a new trial based on the above newly-discovered evidence, which could not have been with due diligence prior to filing this instant motion.

### (ii)    The Jury Service and Selection Act Claim

**(a) Introduction**

Briefly summarized, the JSSA declares "that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross-section of the community:   provides that "all citizens shall have the opportunity to be considered for service on grand and petit juries in the District courts of the United States, and shall have an obligation to serve as jurors when summoned for that purpose, prohibits exclusion on the grounds of race, color, religion, sex, national origin or economic status; and required Federal District courts to adopt a written plan for random

selection of grand and petit jurors that shall be designed to achieve the objective of section 1861 and 1862, 28 U.S.C. 1863 (a).

By its term, 28 U.S.C. 1867 (d), the JSSA only provides a remedy for substantial failures to comply with it's provisions, **Paradies**, 98 F.3d at 1279; **United States v. Gregory**, 730 F.2d 692, 698-700 (11th Cir. 1984).  In determining whether a violation is substantial, "the alleged violations must be weighed against the underlying principles of the act.  **Gregory**, 730 F.2d at 699.  These principles are 1)  Random selection of jurors, and 2)  determination of disqualification, excuses, exemptions and exclusions on the basis of objective criteria only.  **Bearded**, 659 F.2d at 600-01; **Gregory**, 730 F.2d at 699.

In addition to these general principles, the JSSA provides that a potential juror may be excused or excluded from a panel on the grounds enumerated in  1863 (b)(5)(A), 1863 (b)(5)(B) or 1866 (c)(1)(5).  Section 1863 (B(5)(A) and (B) permit District courts to grant excuses from service based on undue hardship or inconvenience to specific  groups of people or persons in certain occupational classes.  In contrast 1866 (c)(1)(5) does not limit excuses to the specific groups or occupational classes identified in 1863 (b)(5)(A) and (B) but permits the District court to grant temporary excuses from jury service based upon 1) undue hardship or extreme inconvenience, 2) inability to render impartial jury service, 3) the result of a peremptory challenge or a challenge for cause, or 4) the court's determination that service as a juror would threaten the secrecy of the proceedings.

### (b)The August 25-26, 1998 Trial Term

Petitioner Hughley's case was scheduled for August 25-26, 1998 court term. Although the Clerk's office typically creates the venire list for a particular term of court from one, 200-persons summons list, petitioner Hughley's summons list contained

approximately 349 names. Of the persons on Hughley's summons list, 65 or 18.63% of them were African-Americans and 278 or 79.66% of them were white. However, 24.8% of Hughley's summons list were K jurors of where 11% or 12% were African-Americans and 75% or 87.2% were white. Approximately 120 people on the summons lists relieved TZ codes and were excused from jury service. At the completion of this process, the jury administrator compiled a venire list containing 111 names. Hughley's venire was ultimately composed of 105 people who reported for jury selection on December 6, 1999, of which 12.4% were African-Americans. However, 53.3% of Hughley's venire was composed of K jurors, 8.9% were African Americans and 91.07% were white.

(iii)    **Government Misconduct**

Here the government upon information and belief knew at grand jury selection, it was clear beyond a reasonable doubt that the grand jury consisted of a disproportionate number of white jurors, as would Hughley's petit jury. In fact, the government had known knowledge that only four (4) of the prospective jurors available to Hughley i.e. 13% would be African-American. And the government moved for an indictment by the grand jury with the knowledge that the venire reflected the under-representation of African-Americans and the government knew both the grand jury and petit jury would be a jury venire on the grounds that they had been selected inappropriately and in violation of the sixth amendment. Here the jury venire included prejudice and the government knew our should have known of this prejudice and there was a likelihood the prejudice could affect the indictment and trial itself. See **United States v. Delvecchio**, 707 F.2d 121 (11th Cir. 1983). Jeopardy attaches when jury is impaneled and sworn, **United States v. Lorentos**, 995 F.2d 1448 (9th Cir. 1993); **Trevino v. Texas**, 503 U.D. 118 Led 2D 193,

12

112 Sct ___ (1992); **Batson v. Kentucky**, 476 U.S. 79, 90 Led 2D 69, 106 Sct. 1712 (1986). 1) Purposeful racial discrimination is selection of the venire violates a defendant's right of equal protection. (see **Batson**), 2) Accused's objection under equal protection clause to race based use of peremptory challenges prior to the Supreme Court's decision in **Batson v. Kentucky**, held preserved for review by the Supreme Court (see **Trevino**). Racially-based exclusion of even a single juror violates equal protection clause. **Floyd v. Garrison**, 996 F.2d 947 (8th Cir. 1993) fifth amendment guarantees of equal protection requires that the procedures used to select jury pool be racially non-discriminatory. Here the government had knowledge jury selection was not based on the fair cross-section requirement of the sixth amendment, the equal protection component of the fifth amendment or an substantial failure to assure to comply with the provisions of the jury selection and service act. **United States v. Grisham**, 63 F.3d 1074, 1077 (11th Cir. 1995). In addition, a trial by jury selected in an arbitrary and discriminatory manner violates the due process clause.

The sixth amendment guarantees all criminal defendants the rights to a speedy and public trial by an impartial jury. Constitutional Amendment VI. An essential characteristic of an impartial jury is that its members are drawn from a fair cross-section of the community. **Taylor v. Louisiana**, 419 U.S. 522, 527 (1975); **Duren v. Missouri**, 439 U.S. 357, 359 (1979). To establish a prima facie case that the jury selection process does not produce a fair cross-section of the community, the defendant must show 1) that the group alleged to be excluded is a distinctive group in the community, 2) that the representation of the group in venires is not fair and reasonable in relation to the number of such persons in the community, and 3) that the under-representation is due to the

systematic exclusion of the group in the jury selection process. **Duren**, 439 U.S. at 364 S.ct. at 668. In the instant case, petitioner Hughley has shown that the selection  process does not produce a fair cross-section of the community, as a well as government misconduct by assuring that the under-representation is due to the systematic exclusion of African-Americans in the jury selection process.

Finally, it is evident the government misconduct utilized resulted in the under-representation of African-Americans in the grand juror and petit jury selection process. A review of the jury venires in the Middle District of Alabama for the past several years reflects that African-American are consistently under-represented in the qualified juror pools, and known to the government prior to the Middle District of Alabama venires. Moreover, petitioner Hughley's right to due process was violated by the absence of a jury selected at random from a fair cross-section of the community. And knowingly misconduct by the government, due process mandates that criminal defendants have the right to grand petit juries selected at random from a fair cross-section of the community. **Duren v. Missouri**, 439 U.S. 357 (1979). Because of clear government misconduct in the case instant case, and because the venire in petitioner Hughley's case did not represent a fair cross-section, his right to due process, as guaranteed by the fifth amendment has been violated.

### (iv) 60 (B)(6)

In the case of **United States v. Ransom**, 983 F.Supp. 2D 101 (D. Ran. 1997). That court found that while it may be difficult to have conceived of the situation before the court, the announce constitutional violation inherent in the design was unavailable under 2255, when relief could be justified via Rule 60 (B)(6) newly discovered evidence, ID at

1019. The court continued, if the defendant can demonstrate that he's actually innocent of the offense or the announced punishment, then there is compelling reasons to grant relief pursuant to Rule 60 (B)(6) or Writ of Error Coram Nobis. ID. **In Re Dorshinvel**, 119 F.3d 245 (3rd Cir. 1997); **Trieman v. United States**, 124 F.3d 366 (2nd Cir. 1997). Substantiate the Tenth Circuit holding, miscarriage of justice and fundamental defect in the proceeding essence of both 28 U.S.C. 2255 and 28 U.S.C. 1651, as well as a Rule 60 (B)(6), based upon newly discovered evidence. Based on the above, petitioner Hughley's motion for a new trial should be granted.

Respectfully submitted,

Johnny Hughley, Pro-se

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of January 2006, I served a copy of the foregoing on the opposed by placing the same in the United States mail, first class postage paid and addressed as follows:

Louis Franklin
Assistant U.S. Attorney
P.O. Box 197
Montgomery, Alabama 36104

Respectfully submitted,

Johnny Hughley, Pro-se
1114 Lee Road 6
Auburn, Alabama 36830

15